William H. Roth (WR 8264)
LAW OFFICE OF WILLIAM H. ROTH
1 River Place, Suite 3608
New York, New York 10036
(646) 454- 1272
*Attorney for Gregory Spekor*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
x----------------------------------------------------------x
ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY & CASUALTY,
  INSURANCE COMPANY and
DEERBROOK INSURANCE COMPANY,

     Plaintiffs,

  -against-

GERALD M. TANELLA, GREGORY
SPEKTOR, INNA LYUBRONETSKAYA,
GERALD M. TANELLA, ATTORNEY AT
LAW, P.C. and PROFESSIONAL
BILLING SERVICES,

     Defendants.
x----------------------------------------------------------x

Civil Action No. 11- 6364
(Amon, Ch. J.) (Levy, Mag. J.)

# DEFENDANT GREGORY SPEKTOR'S MEMORANDUM
# IN SUPPORT OF MOTION TO DISMISS

DEFENDANT GREGORY SPEKTOR'S REPLY MEMORANDUM

Defendant Gregory Spektor ("Spektor") submits this Reply Memorandum in further support of his motion, pursuant to Fed R. Civ. Pro. 12 (b) (6), to dismiss the Complaint of Plaintiffs (hereafter, "Allstate") which seeks recovery under RICO and the common law on account of his association with defendant law firm, Gerald M. Tanella, Attorney at Law, P.C. (the "Law Firm"), which is alleged to have unlawfully split some $44,000 in legal fees with non-professionals. Allstate paid these fees to the Law Firm pursuant to regulations of the New York State Insurance Department which require no-fault insurers who fail to make timely payment to health care providers to pay the legal fees of the health care providers in accordance with a formula (11 NYCRR § 65-3.10 and § 65-4.6 (c) and (e)). Here, it is undisputed, Allstate failed to pay certain health care providers in the time required by the Insurance Department regulations; the health providers retained the Law Firm to collect the past-due debt; and upon payment to the health care providers of the past-due charges, Allstate paid the Law Firm in accordance with the payment formula promulgated by the Department of Insurance.

I.

THE REGULATION WHICH PRECLUDES
CERTAIN HEALTH CARE PROVIDERS FROM
RETAINING NO-FAULT PAYMENTS DOES
NOT APPLY TO OTHER ENTITIES SUCH AS LAW FIRMS

Allstate argues that its claim against Spektor is based on the cases of *State Farm Mut. Auto. Ins. Co v. Grafman*, 655 F. Supp. 2d 212 (E.D.N.Y. 2009), *Allstate v. Bogoraz*, 818 F. Supp. 2d 544 (E.D.N. Y. 2009) and *State Farm v. Rabiner*, 749 F. Supp. 2d 94 (E.D.N. Y 2010) (Allstate Memorandum of Law at pages 13-14) in which RICO claims were upheld against health care providers which received payments for medical services provided under the New

1

York No-Fault system and which were owned by non-physicians. However, those cases rely upon a specific regulation of the New York State Department of Insurance ("Insurance Department"), 11 NYCRR 65.3.16 (a) (12), which applies solely to health care providers and as to which there is no analogous rule applying to other persons or entities such as law firms. A review of the development of the law underlying the *Grafman, Bogoraz* and *Rabiner* decisions and similar cases demonstrates that the Insurance Department regulation is the lynchpin for the finding of liability in those cases. Not a single case, regulation or policy reason exists to support extending the holdings in those cases to the facts alleged here.

In 2004, the Second Circuit was presented with an issue in the action of *State Farm Mut. Auto. Ins v. Mallela*, 372 F.3d 500 (2d Cir 2004) (on review from decision of this Court, reported at 2002 U.S. Dist LEXIS 25187 (Sifton, J.)) of whether an insurer participating in the New York No-Fault system was obligated to pay for services provided by a health care provider which was unlawfully formed by reason of having non-physicians as owners. Rather than decide the unresolved issue of New York State law, the Second Circuit certified the question to the New York Court of Appeals. The Court of Appeals accepted the certified question and held that payment could be withheld in such circumstances, but provided an analysis and imposed a limitation on its ruling which prevents imposition of liability in the circumstances alleged here. *State Farm Mut. Auto. Ins. Co., v. Mallela*, 4 N.Y. 3d 313 (2005).

In *Mallela,* the New York Court of Appeals ruled that a regulation of the Insurance Department, 11 NYCRR 65.3.16 (a) (12), effective April 4, 2002, provided the legal basis to deny improperly-formed medical providers reimbursement for services rendered, even if such services were legitimate. The regulation, which applies only to health care providers, states:

> A provider of health care is not eligible for reimbursement under [the

2

> pertinent No-Fault statute] if the provider fails to meet any applicable New York State or local licensing requirement. . . .

*State Farm v. Mallela,* 4 N.Y. 3d at 320 (quoting regulation).

The Court of Appeals noted that the Superintendent's rationale for promulgating the regulation was that the "rapidly growing incidences of fraud" in the no-fault reimbursement system was "correlative with the corporate practice of medicine by nonphysicians" (*id.*). Emphasizing that it was solely the existence of the regulation that justified the imposition of the ban against paying non-physician health care providers even for legitimate services, the Court of Appeals limited its ruling by holding that "no cause of action for fraud or unjust enrichment would lie for any payments made by the carriers before the regulation's effective date of April 4, 2002." *Mallela, supra,* 4 N.Y. 3d at 322. *See, State Farm Mut. Auto. Ins. v. Grafman, supra,* 655 F. Supp. 2d at 221. But, *Mallela* does not justify disgorgement of payments in any other circumstances.

 None of the parties here is a "provider of health care" which the regulation identifies as the only entity ineligible for no-fault reimbursement by reason of non-compliance with licensing requirements. There is no regulation applying the ban to non-health care providers, such as law firms. Our research and, apparently Allstate's as well, has not revealed a single instance in which a party, like defendant Spektor, has been held liable on the facts pleaded here under any theory of law.

 No law, regulation or policy reason exists to justify extending the *Mallela* doctrine beyond the limits recognized by the New York Court of Appeals. There is no showing that, as in the case of health care providers, a "correlation" exists between law firms which are alleged to share fees with non-lawyers and fraud committed against no-fault insurers or anyone else. The absence of a single case which alleges the theory put forward here suggests that such correlation would be impossible to establish.

3

Thus, there is no legal basis to impute liability to a law firm, merely on the basis of its ownership structure. Rather, law firms are in the same position as health care providers were prior to the effective date of the regulation, as to which the Court of Appeals held that "no cause of action for fraud or unjust enrichment would lie for any payments made by the carriers." *Mallela, supra,* 4 N.Y. 3d at 322. There is simply no cognizable claim to be made against a law firm on account of its alleged sharing of fees with non-lawyers, where, as here, the Plaintiff is in fact liable for the payment of such fees.

II.

## NOTHING IN THE COMPLAINT SATISFIES RICO'S DAMAGE OR PROXIMATE CAUSE REQUIREMENTS

Under the New York No-Fault scheme, legitimate health care providers who treat people covered by no-fault insurance are entitled to payment for services within 30 days. N.Y. Ins Law § 5106(a). To motivate insurers to meet such deadline, the No-Fault Statute and the Insurance Department's regulation (11 NYCRR § 65-4.6(e)) provide that if the health care provider hires an attorney to collect past-due bills from an insurer, the insurer is liable for the health care provider's attorney's fees in an amount equal to 20% of the amount of the overdue invoices, up to a maximum of $850 per incident.

The Complaint does not allege that Allstate in fact made timely payment of the invoices for which the Law Firm, here, was hired to collect. Thus, there was nothing improper about the health care providers retaining counsel to collect their overdue bills. The Complaint does not allege that Allstate was somehow exempt from the Insurance Department regulation requiring them to pay the health care provider's attorney's fees calculated on the basis of the formula.

Thus, the complaint implicitly acknowledges that Allstate was liable for the attorney's fees on account of its failure to make timely payment to the health care providers.

Rather, the sole justification asserted here for seeking disgorgement of three times the fees that Allstate was required by law to pay is that the particular law firm which was engaged to collect Allstate's defaulted obligations is alleged to have split fees with non-lawyers. Such theory of recovery fails to establish that Allstate suffered any loss or was caused damage in any way. As a result of its own failure to meet the payment deadlines established in the no-fault statue and regulations, Allstate was required to pay the health care provider's attorney's fees and its obligation to do so is not affected by the identity of the firm that the health care provide selected to perform such services. Allstate was liable for the attorney's fees which it seeks to recoup in this action. No law, regulation or judicial decision justifies the return of such legitimately-incurred fees.

All cases relied upon by Allstate to hold Spektor or the other Defendants with whom he is alleged to have worked in concert liable are cases in which the insurer suffered actual damage caused by the defendants. In each of the cases Allstate relies on, the acts of the Defendants were alleged to have caused the insurer to make higher payments than would have been required if the Defendants had acted in a non-fraudulent manner. For instance, in *Allstate v. Seigel,* 312 F. Supp. 2d 260 (Dist. Conn. 2004) (hereafter, "*Seigel"*) which Allstate characterizes as "relevant persuasive authority" (Allstate Memorandum of Law at page 22), the Complaint alleged that the physician-defendant "knowingly billed the insurance providers for [needle electromyography] tests" that the physician "did not perform . . . on a significant number of his patients " *(Seigel, supra,* at 263) and "authored medical reports . . . that were false and misleading in light of actual test results" (*id.*). As a result of charging for non-existent

5

tests and issuing reports which falsely exaggerated the extent of injuries, the complaint identified financial losses that the physician's dishonesty caused the insurer "loss of funds paid for false and fraudulent (whether wholly fictitious or grossly inflated) bills for services" (*id.*) and payments made for "fraudulently inflated claims" on judgments or to settle civil litigation claims (*Seigel, supra,* at 263-64). The physician's dishonest practices were alleged to have caused Allstate to pay "over $3,400,000 in jury and settlement awards" (*id.,* at 263) which would have not been paid if the physician-defendant had conducted his medical practice honestly. The *Seigel* complaint alleges a direct financial loss incurred by the plaintiff insurer, which would not have been incurred without the fraudulent behavior of the defendant:

> Here, Allstate was directly injured by Seigel's fraudulent conduct, since Allstate paid settlements and judgments that were based, at least in part, on phony medical bills, tests that were never performed and/or medical reports that purportedly documented injuries that had never been sustained by the tort victims.

*Seigel, supra,* 312 F. Supp. 2d at 267.

In contrast, in the instant action, Allstate has not alleged any loss that arose from the alleged improper conduct of Defendants. Allstate was indebted to any law firm which represented the health care providers that retained counsel to collect their overdue bills; the amount Allstate was liable for was wholly unaffected by the identity of the law firm that performed the collection work or the use that the firm put to the legal fee which it was entitle to collect.

This fact distinguishes the allegations from those alleged in the no-fault fraud cases relied upon by Allstate at page 14 of its Memorandum of Law. *AIU v Olmecs,* 2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. February 22, 2005) at * 3 (Plaintiff alleges that defendants "have stolen money" by submitting "thousands of fraudulent charges" for medically unnecessary equipment); *Allstate v. Halima,* 2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. March 19, 2009) at *4

and * 9 (Complaint alleges that defendants conspired "to obtain diagnostic tests that were medically unnecessary" and attaches 916 "allegedly fraudulent reimbursement claims" submitted for payment by defendant). The actual monetary loss suffered by Allstate in the *Etienne, Rozenberg* and *Valley Physical Medicine* cases is described at pages 8-9 of Spektor's moving brief submitted on this motion.

In sum, Allstate's effort to collect attorney's fees previously paid because, it alleges, the fees were distributed unlawfully to non-lawyers is unprecedented. Nothing in case law, in the Superintendent's regulations or in policy justifies such relief. The Complaint here fails to allege Plaintiff's loss, that Defendants caused any loss or that Defendants proximately caused the loss, all of which RICO requires. The state law claims fail for the same reasons.

## Conclusion

The simple fact is, the Complaint does not plead any damages that Allstate suffered. Thus, there is not a single case in State or Federal jurisprudence which imposes liability on the allegations pleaded. Accordingly, the Complaint should be dismissed with prejudice against Defendant Gregory Spektor.

Dated: New York, New York
      June 15, 2012

LAW OFFICE OF WILLIAM H. ROTH

\_\_\_s/\_\_\_
William H. Roth (WR 8264)
*Attorney for Defendant*
 *Gregory Spektor*
1 River Place, Suite 3608
New York, New York 10036
(646) 454-1272

8

To: Richard D. King, Jr., Esq.
　　Smith & Brink, P.C
　　1325 Franklin Avenue
　　Garden City, New York 11539
　　*Attorneys for Plaintiffs*

　　James R. Froccaro, Esq.
　　20 Vanderventer Ave.
　　Port Washington New York 11050
　　*Attorneys for Defendants Lyubronetskaya*
　　and *Professional Billing Services*